**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**CASE NO.: 8:25-CV-2530**

MARIA C. RODRIQUEZ,
An Individual,

Plaintiff,

vs.

LUX SEVEN AUTO SALES, CORP.,
A Florida Profit Corporation, and,
LUIS NUNEZ, an individual

Defendants.
_________________________________/

**COMPLAINT FOR DAMAGES AND INCIDENTAL RELIEF**

Plaintiff, MARIA C. RODRIQUEZ, an individual, sue Defendants, LUX SEVEN AUTO SALES, CORP., a Florida Profit Corporation, and LUIS NUNEZ, an individual, and alleges:

***Jurisdiction and Venue***

1. This action arises under the Federal Odometer Act, 49 U.S.C. § 32701 et seq. Jurisdiction is conferred by 28 U.S.C. §§ 1331 and 1337, and 49 U.S.C. § 32710.

2. The Court has supplemental jurisdiction over related state-law claims under 28 U.S.C. § 1367.

3. Venue is proper in this District and Division under 28 U.S.C. § 1391 because Defendants reside in, transact business in, and a substantial part of the events or omissions giving rise to the claims occurred in Polk County, Florida, which lies within the Tampa Division of the Middle District of Florida.

## GENERAL ALLEGATIONS

***Synopsis of Proceeding***

4. The present action arises under the Federal Odometer Act, 49 U.S.C. § 32701 et seq. ("Odometer Act"), which prohibits the disconnection, resetting, or alteration of a motor vehicle's odometer when done with the intent to misrepresent the number of miles the vehicle has traveled.

5. Odometer tampering remains a pervasive criminal and consumer fraud problem in the United States. The National Highway Traffic Safety Administration ("NHTSA") estimates that more than 450,000 vehicles are sold each year with falsified odometer readings, inflicting over One Billion Dollars ($1,000,000,000.00) in losses on unsuspecting car buyers annually.

6. In Florida in particular, automobile dealerships have made a practice of rolling back odometers to inflate the value of vehicles and unlawfully increase profit margins. These fraudulent practices disproportionately target so-called "working people" cars—commonly late model vehicles manufactured by Nissan, GMC, and Ford—leaving ordinary consumers most vulnerable to the deception.

## ALLEGATIONS AS TO PARTIES

7. At all times material hereto, Plaintiff, MARIA C. RODRIQUEZ("**Ms. Rodriguez**"), is *sui juris* and a resident of Palm Beach County, Florida.

8. At all times material hereto, Defendant, LUX SEVEN AUTO SALES, CORP. ("**LUX**" or "**Dealership**") is a Florida Profit Corporation, doing business at 2240 US Hwy 92E Unit# 8 Lakeland, FL 33801.

9. At all times material hereto, the Dealership is a "dealer" as said term is defined under 49 U.S.C. §32702(2) and Florida Statute §320.77(1)(a).

10. Defendant, LUIS NUNEZ ("Nunez"), is a natural person who, at all material times,

was the President of Lux and exercised operational control over its acquisition, reconditioning, titling, and sale of vehicles. Nunez personally participated in, directed, approved, and ratified the acts described herein. He derived personal and corporate benefit from those acts and is individually liable for his own statutory violations.

11. At all times material hereto, the Dealership was in the business of selling and financing used motor vehicles to the public-at-large in Polk County, Florida.

**FACTUAL ALLEGATIONS**

12. On or about February 7, 2025, Plaintiff purchased a 2018 Ford Escape, VIN ending in 36888 (the "Subject Vehicle"), from Lux in Lakeland, Florida.

13. Plaintiff is an unsophisticated consumer with limited experience purchasing automobiles.

14. As a result, she relied heavily on the representations of the dealership and its principal, Nunez, when deciding to purchase the vehicle.

15. At the time of the sale, Lux represented orally and in writing that the Subject Vehicle's mileage was 72,576.

16. During the sales process, Nunez acted as though he did not know the actual mileage of the vehicle.

17. Rather than provide accurate disclosures, Nunez asked Plaintiff how many miles the Subject Vehicle had, to which Plaintiff responded that she did not know exactly, only that the odometer read approximately 72,000 miles.

18. Nunez assured Plaintiff not to worry and told her he would "put something there" on the documents.

19. In reality, Nunez knew the vehicle's true mileage from Lux's acquisition paperwork and auction records. He deliberately caused paperwork to reflect a false mileage figure and marked the disclosure as "not actual mileage," creating the illusion that the discrepancy was an innocent clerical issue rather than a deliberate rollback.

20. Upon good information and belief, when Lux acquired the Subject Vehicle at Insurance Auto Auctions ("IAA") in or about November 2024, contemporaneous records reflected significantly higher mileage.

21. The Florida title executed by Lux and IAA paperwork documented approximately 156,650 miles on November 21, 2024.

22. IAA photographs confirmed approximately 156,560 miles on the odometer at the time of its sale to Lux.

23. After acquisition, Lux placed the Subject Vehicle into its exclusive care, custody, and control for intake, reconditioning, and resale.

24. By the time Lux and Nunez sold the Subject Vehicle to Plaintiff in February 2025, they recorded the mileage as 72,576 on the odometer disclosure statement and related paperwork.

25. This represented a rollback of approximately 83,984 miles.

26. Ultimately, Plaintiff determined that the mileage had been tampered with.

27. Plaintiff submitted a complaint to the Florida Department of Highway Safety and Motor Vehicles ("DHSMV").

28. DHSMV concluded that Lux purchased the vehicle with approximately 156,560 miles.

29. DHSMV further concluded that Lux sold the vehicle with 72,576 miles.

30. DHSMV determined the odometer rollback occurred while the vehicle was in Lux's

possession.

31. After first denying that the cluster had been replaced, Nunez, acting for Lux, advanced a story that, *inter-alia,* the odometer had been replaced by a mechanic.

32. To support this explanation, Nunez produced a purported invoice for a "used" instrument cluster from Gardner Auto Parts.

33. This attempted cover-up cemented liability because it revealed non-compliance with 49 U.S.C. § 32704.

34. Even if Nunez's narrative had been plausible, it collapsed when Gardner Auto Parts denied issuing the invoice.

35. Gardner confirmed that the document bore alterations, including an incorrect VIN and a forced 17-digit revision.

36. DHSMV ultimately issued citations for multiple violations, including odometer tampering, providing false odometer information, and possession of a vehicle with an altered odometer with intent to defraud.

37. DHSMV issued a written outcome letter memorializing its findings.

38. Nunez personally handled Lux's responses to DHSMV.

39. Nunez personally advanced the "replacement cluster" cover up story.

40. Nunez personally supplied the altered invoice and work order.

41. Nunez directed and personally participated in the preparation of the false paperwork given to the DHSMV.

42. This included editing the VIN sequence and forcing alterations to create the appearance of legitimacy.

43. DHSMV confirmed the invoice was not genuine.

44. DHSMV confirmed it did not originate with Gardner Auto Parts.

45. The odometer rollback was never disclosed as a lawful replacement with required labeling and documentation under federal law.

46. Nunez was the decision-maker who authorized the vehicle to be marketed and sold at the reduced mileage.

47. Nunez knew the true mileage from Lux's acquisition paperwork.

48. Nunez instructed sales staff to use and present the odometer disclosure reflecting 72,576 miles.

49. Nunez ensured that the misrepresentation would be incorporated into the sales transaction.

50. Nunez orchestrated, directed, and approved the acts necessary to carry out the rollback scheme.

51. Nunez personally benefitted from the profits realized by selling a high-mileage vehicle as though it had substantially fewer miles.

52. Nunez knew the vehicle's true mileage at acquisition.

53. Nunez exercised operational control over its reconditioning and titling.

54. Nunez caused, procured, or had the odometer disconnected, reset, altered, or replaced without lawful compliance.

55. Nunez directed and approved the issuance of false odometer disclosures at the time of sale.

56. Nunez later submitted the altered, non-authentic invoice to regulators in an effort to conceal the misconduct.

57. Upon information and belief, tampering with odometers and the sale of vehicles with

tampered odometers is a regular business practice of the dealership.

58. All conditions precedent to instituting this action have occurred or have otherwise been waived.

59. Plaintiff has retained the undersigned law firm and has obligated herself to pay a reasonable fee for its services.

60. Plaintiff reserves the right to amend the complaint following discovery and subsequent proffer to discern the identity of any other co-conspirators to Lux's fraudulent scheme to violate the Act.

**COUNT I**
**ACTION FOR VIOLATION OF THE FEDERAL ODOMETER ACT**
**(As to Dealership)**

61. This is an action for violation of the Federal Odometer Act, also known as the "Federal Motor Vehicle Information and Cost Savings Act," 49 U.S.C. §32710, et seq. ("**Odometer Act**" or "**Act**"), and the regulations promulgated thereunder. Specifically, this is a claim based on odometer tampering.

62. The federal claims in this lawsuit are based on Lux's violation of the Act's anti-tampering requirements of 49 U.S.C. §32703, not on a claim of non-disclosure under 49 U.S.C. §32705.

63. Ms. Rodriguez realleges and reaffirms the allegations contained in Paragraphs 1 through 59 above as if set forth hereat in full.

64. Lux is a "person" and a "transferor" within the meaning of 49 U.S.C. §§ 32702 and 32705 and 49 C.F.R. Part 580.

65. Pursuant to 49 U.S.C. §32703, a person may not *inter alia:*

disconnect, reset, alter or have disconnected, reset, or altered, an odometer of a motor vehicle intending to change the mileage registered by the odometer;

with intent to defraud, operate a motor vehicle on a street, road or highway if the person knows that the odometer of the vehicle is disconnected or not operating; or,

conspire to violate 49 U.S.C. §32703, §32704 or §32705 of the Act.

66. Pursuant to 49 U.S.C. §32704, a person may service, repair or replace the odometer of a motor vehicle if the mileage registered by the odometer remains the same as before the service, repair or replacement. If the mileage registered cannot remain the same -

(1) a person shall adjust the odometer to read zero; and,

(2) the owner of the vehicle or agent of the owner shall attach written notice to the left door frame of the vehicle specifying the mileage before the service, repair or replacement and the date of service of service, repair or replacement.

67. Pursuant to 49 U.S.C. §32705, a motor vehicle the ownership of which is transferred may not be licensed for use in the state unless the transferee, in submitting an application to the state upon which the license will be issued, includes with the application the transferor's title and, if that title contains a blank space, must disclose the mileage at the time of a future transfer, a statement, signed and dated by the transferor under the Odometer Act.

68. On or about November 21, 2024, Lux acquired the Subject Vehicle from Insurance Auto Auctions with approximately 156,650 miles reflected on the Florida title and IAA paperwork, and approximately 156,560 miles reflected in IAA photographs.

69. From acquisition through the February 7, 2025 sale to Plaintiff, the Subject Vehicle remained in Lux's exclusive care, custody, and control for intake, reconditioning, titling, and resale. While the vehicle was in Lux's possession, Lux disconnected, reset, altered, or had disconnected,

reset, or altered the odometer with intent to change the number of miles registered, reducing the indicated mileage by approximately 83,984 miles, in violation of 49 U.S.C. § 32703(1).

70. Lux failed to comply with 49 U.S.C. § 32704 and implementing regulations by (a) failing to keep the mileage the same as before the service, or, if reset to zero, (b) failing to provide and affix the required written notice stating the prior mileage and the date of service.

71. The DHSMV's investigation corroborated that the rollback occurred while the vehicle was in the possession of the dealer and that paperwork proffered to justify a "replacement cluster" included an altered, non-genuine invoice bearing incorrect VIN information.

72. Lux's conduct was undertaken with the intent to defraud Plaintiff and consumers by concealing the vehicle's true mileage and enhancing its appeal to consumers.

73. As a direct and proximate result of the above-described actions, Dealership violated the Act with the intent to defraud.

74. As a result of the violation of the Act, Dealership is liable to Ms. Rodriguez in an amount equal to three times actual damages or $10,000.00, whichever is greater, plus attorney's fees and costs pursuant to 49 U.S.C. §32710.

75. Ms. Rodriguez has retained the undersigned attorney and are obligated to pay said attorney a reasonable fee for his services.

WHEREFORE, Plaintiff, MARIA C. RODRIGUEZ, an individual, demands judgment against Defendant, LUX SEVEN AUTO SALES, CORP., a Florida corporation, for statutory and actual damages, together with attorney's fees and costs pursuant to 49 U.S.C. §32710.

**COUNT II**
**ACTION FOR VIOLATION OF THE FEDERAL ODOMETER ACT**
**(As to Nunez)**

76. This is an action for violation of the Federal Odometer Act, also known as the "Federal Motor Vehicle Information and Cost Savings Act," 49 U.S.C. §32710, et seq. and the regulations promulgated thereunder. Specifically, this is a claim based on conspiring to commit a violation of the Act. 49 U.S.C. § 32703(3).

77. Ms. Rodriguez realleges and reaffirms the allegations contained in Paragraphs 1 through 58 above as if set forth hereat in full.

78. The Federal Odometer Act expressly prohibits not only direct tampering but also participation in, or facilitation of, such unlawful conduct. Specifically, 49 U.S.C. § 32703(3) makes it unlawful for any person to "conspire to violate" the Act or to "have someone else" commit acts prohibited under § 32703.

79. Nunez is a "person" under 49 U.S.C. § 32702 and is subject to civil liability under 49 U.S.C. § 32710 for violations he committed, conspired to commit, or aided and abetted.

80. At all material times, Nunez exercised operational control over Lux's acquisition, reconditioning, titling, and sale processes for the Subject Vehicle.

81. Nunez knew, from Lux's acquisition records including the Florida title and IAA paperwork and photographs, that the Subject Vehicle had approximately 156,560 miles at acquisition in November of 2024.

82. Nunez knowingly and intentionally aided and abetted Lux's violation of 49 U.S.C. § 32703(1) by directing, procuring, encouraging, and causing employees or third parties to disconnect, reset, alter, replace, or otherwise manipulate the odometer or instrument cluster to reduce the indicated mileage while the vehicle was in Lux's possession, or by having such acts performed on Lux's behalf, with the specific intent to defraud.

83. Nunez knowingly and intentionally conspired with Lux to violate 49 U.S.C. §§

32703 and 32705, in violation of § 32703(3), by agreeing that the vehicle would be marketed and sold using a materially reduced mileage figure, by agreeing to furnish a false odometer disclosure at transfer, and by taking overt acts in furtherance of that agreement.

84. In furtherance of the conspiracy and aiding-and-abetting scheme, Nunez personally advanced a false "replacement cluster" narrative and supplied regulators with an altered invoice purporting to justify the change, which DHSMV determined did not originate from the purported vendor and bore altered VIN information.

85. Nunez knowingly failed to ensure compliance with 49 U.S.C. § 32704 and implementing regulations, including the affixing of required written notice and the maintenance of accurate mileage documentation.

86. Nunez acted with specific intent to defraud Plaintiff by concealing the vehicle's true mileage, thereby inflating the vehicle's apparent condition, value, and saleability.

87. Nunez's violations and participation in the violations directly and proximately caused Plaintiff's damages.

88. Pursuant to 49 U.S.C. § 32710, Plaintiff is entitled to recover from Nunez the greater of treble actual damages or $10,000, together with reasonable attorney's fees and costs.

WHEREFORE, Plaintiff, MARIA C. RODRIGUEZ, an individual, demands judgment against Defendant, LUX SEVEN AUTO SALES, CORP., a Florida corporation, for statutory and actual damages, together with attorney's fees and costs pursuant to 49 U.S.C. §32710.

**COUNT III**
**ACTION FOR FRAUD**
**(Dealership)**

89. This is an action for common law fraud brought under the pendant jurisdiction of the Court.

90. Ms. Rodriguez realleges and reaffirms the allegations contained in Paragraphs 1 through 58 above as if set forth hereat in full.

91. As more fully described above, Dealership misrepresented material facts concerning the sale of the Subject Vehicle to Ms. Rodriguez at the time of the sale of the Vehicle, to wit: the Mileage Representation.

92. Dealership knew that the representations set forth above were false or made such representations recklessly, and Dealership had no reasonable grounds for believing those representations to be true.

93. Dealership knew that the above representations and omissions concerning the purchase of the Subject Vehicle were material and important.

94. Dealership intended to deceive Ms. Rodriguez, who relied upon the misrepresentations and omission to her detriment.

95. As a direct and proximate result of the misrepresentations and non-disclosures by Dealership, the actual and economic damages of Ms. Rodriguez include but are not limited the diminution in value of the Subject Vehicle as a result of it having an inaccurate odometer as well as increased maintenance costs associated with a vehicle of higher mileage.

WHEREFORE, Plaintiff, MARIA C. RODRIGUEZ, an individual, demands judgment against Defendant, LUX SEVEN AUTO SALES, CORP., a Florida corporation, with interest and costs.

**COUNT IV**
**ACTION FOR BREACH OF EXPRESS WARRANTY**
**(Dealership)**

96. This is an action for breach of express warranty, pursuant to Section 2-313 of the

Uniform Commercial Code ("UCC"), pursuant to the pendant jurisdiction of the Court.

97. Ms. Rodriguez realleges and reaffirms the allegations contained in Paragraphs 1 through 58 above as if set forth hereat in full.

98. From the various statements by Dealership, including the Mileage Representation, Dealership made an express warranty pursuant to Section 2-313 of the Uniform Commercial Code ("UCC") by both affirmation of fact or promise and by description of goods ("Express Mileage Warranty").

99. As evidenced by the title records and other evidence, Dealership has breached the Express Mileage Warranty.

100. As a direct and proximate result of the breach of the Express Mileage Warranty, Ms. Rodriguez has been damaged.

101. The damages of Ms. Rodriguez include but are not necessarily limited to the diminution in value of the Subject Vehicle as a result of it having an inaccurate odometer and increased maintenance costs associated with a vehicle of higher mileage.

WHEREFORE, Plaintiff, MARIA C. RODRIGUEZ, an individual, demands judgment against Defendant, LUX SEVEN AUTO SALES, CORP., a Florida corporation, together with interest and costs.

**COUNT V**
**ACTION FOR REVOCATION OF ACCEPTANCE**
**(Dealership)**

102. This is a claim for revocation of acceptance brought pursuant to the pendant jurisdiction of the Court.

103. Ms. Rodriguez realleges and reaffirms the allegations contained in Paragraphs 1

through 58 above as if set forth hereat in full.

104. Plaintiff accepted the Vehicle without discovering the above-described mileage tampering because Plaintiff was reasonably induced to accept the Vehicle based on Dealer's misrepresentations and the difficulty of discovering the above facts.

105. Dealer refused and continues to refuse to correct the nonconformities present in the subject vehicle.

106. The nonconformities substantially impair the value of the Subject Vehicle.

107. Plaintiffs notified Dealer, verbally and in writing, that Plaintiff was revoking acceptance.

108. Despite Plaintiff's notices, Dealer failed to resolve the dispute.

WHEREFORE, Plaintiff, MARIA C. REODRIGUEZ, an individual, demands judgment against Defendant, LUX SEVEN AUTO SALES, CORP., a Florida corporation, for the following:

A. Declaring acceptance has been properly revoked by Plaintiffs and for damages incurred in revoking acceptance;

B. A refund of the entire purchase amount paid by Plaintiff for the subject vehicle;

C. Consequential, incidental and actual damages;

D. Costs, interest and attorney's fees pursuant to 15 U.S.C. §2310(d)(2); and,

E. Such other relief this Court deems appropriate.

***DEMAND FOR JURY TRIAL***

Plaintiff, MARIA C. RODRIGUEZ, an individual, pursuant to Rule 38(b), Federal Rule of Civil Procedure, hereby demands a trial by jury of all issues so triable.

Respectfully Submitted,

/s/ Joshua Feygin
**Joshua Feygin, Esq.**
FLORIDA BAR NO: 124685
Email: Josh@Sueyourdealer.com
**SUE YOUR DEALER – A LAW FIRM**
4601 Sheridan St #205
Hollywood, FL 33021
Telephone: (954) 228-5674
Facsimile: (954) 697-0357
*Counsel for the Plaintiff*