UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CASE NO.: 8:25-cv-02530

MARIA C. RODRIGUEZ,
An Individual,

       Plaintiff,

vs.

LUX SEVEN AUTO SALES, CORP.,
A Florida Profit Corporation, and,
LUIS NUNEZ, an individual

       Defendants.

_____/

## AMENDED COMPLAINT FOR DAMAGES AND INCIDENTAL RELIEF

Plaintiff, **MARIA C. RODRIGUEZ**, an individual, sues Defendants, **LUX SEVEN AUTO SALES, CORP.**, a Florida Profit Corporation, and **LUIS NUNEZ**, an individual, and alleges:

### Jurisdiction and Venue

1.     This action arises under the Federal Odometer Act, 49 U.S.C. § 32701 *et seq.* Jurisdiction is conferred by 28 U.S.C. §§ 1331 and 1337, and 49 U.S.C. § 32710.

2.     The Court has supplemental jurisdiction over related state-law claims under 28 U.S.C. § 1367.

3.     Venue is proper in this District and Division under 28 U.S.C. § 1391 because Defendants reside in, transact business in, and a substantial part of the events or omissions giving rise to the claims occurred in Polk County, Florida, which lies within the Tampa Division of the Middle District of Florida.

## GENERAL ALLEGATIONS

### *Synopsis of Proceeding*

4.      The present action arises under the Federal Odometer Act, 49 U.S.C. § 32701 *et seq.* ("**Odometer Act**"), which prohibits the disconnection, resetting, or alteration of a motor vehicle's odometer when done with the intent to misrepresent the number of miles the vehicle has traveled.

5.      Odometer tampering remains a pervasive criminal and consumer fraud problem in the United States. The National Highway Traffic Safety Administration ("**NHTSA**") estimates that more than 450,000 vehicles are sold each year with falsified odometer readings, inflicting over One Billion Dollars ($1,000,000,000.00) in losses on unsuspecting car buyers annually.

6.      In Florida in particular, automobile dealerships have made a practice of rolling back odometers to inflate the value of vehicles and unlawfully increase profit margins. These fraudulent practices disproportionately target so-called "working people" cars, commonly late model vehicles manufactured by Nissan, GMC, and Ford, leaving ordinary consumers most vulnerable to the deception.

## ALLEGATIONS AS TO PARTIES

7.      At all times material hereto, Plaintiff, MARIA C. RODRIGUEZ ("**Ms. Rodriguez**"), is *sui juris* and a resident of Palm Beach County, Florida.

8.      At all times material hereto, Defendant, LUX SEVEN AUTO SALES, CORP. ("**Lux**" or "**Dealership**") is a Florida Profit Corporation, doing business at 2240 US Hwy 92E Unit# 8 Lakeland, FL 33801.

9.      At all times material hereto, the Dealership is a "dealer" as said term is defined under 49 U.S.C. §32702(2).

10.      Defendant, LUIS NUNEZ ("**Nunez**"), is a natural person who, at all material times,

was the President of Lux and exercised operational control over its acquisition, reconditioning, titling, and sale of vehicles for resale to the general consuming public, including Ms. Rodriguez.

11.     Nunez personally participated in, directed, approved, and engaged in the acts described herein. He derived personal and corporate benefit from those acts and is individually liable for his own statutory violations.

12.     At all times material hereto, Lux was in the business of selling and financing used motor vehicles to the public-at-large in Polk County, Florida.

## FACTUAL ALLEGATIONS

13.     On or about February 7, 2025, Plaintiff purchased a 2018 Ford Escape, VIN ending in 36888 (the "**Subject Vehicle**"), from Lux in Lakeland, Florida.

14.     Ms. Rodriguez relied heavily on the representations of the dealership and its principal, Nunez, when deciding to purchase the Subject Vehicle.

15.     At the time of the sale, Lux represented orally and in writing that the Subject Vehicle's mileage was 72,576.

16.     The Subject Vehicle was advertised by Lux as having 72,576 miles.

17.     The advertisement for the Subject Vehicle did not disclose that the mileage was inaccurate.

18.     When completing the odometer disclosures on the various documents prepared by the dealership, Nunez asked Plaintiff to provide him with the mileage reading she believed it had on the odometer during her inspection, acting as if he was unsure of the mileage.

19.     Nunez assured Plaintiff not to worry and told her he would just "put something there" on the documents.

20.     In reality, Nunez knew the vehicle's true mileage from Lux's acquisition paperwork and auction records.

21.     Upon information and belief, Lux acquired the Subject Vehicle at Insurance Auto Auctions ("**IAAI**") in or about November of 2024.

22.     The Florida title executed by Lux and IAAI paperwork documented approximately 156,000 actual miles on November 21, 2024.

23.     IAAI photographs confirmed approximately 156,000 miles on the odometer at the time of its sale to Lux.

24.     After acquisition, Lux placed the Subject Vehicle into its exclusive care, custody, and control for intake, reconditioning, and resale.

25.     By the time Lux and Nunez sold the Subject Vehicle to Plaintiff in February 2025, they recorded the mileage as 72,576 on the odometer disclosure statement and related paperwork.

26.     This represented a rollback of approximately 83,984 miles which occurred while in the custody and control of Lux.

27.     Upon information and belief, Lux, upon the direction of Nunez, disconnected the vehicle's original odometer and had it replaced with an odometer bearing a lower reading or, in the alternative, tampered with the odometer to reduce the mileage reading on the original odometer.

28.     To conceal its fraudulent scheme, Lux, through Nunez, provided Ms. Rodriguez with various mileage disclosures indicating the mileage was "not actual" despite orally representing that the mileage was actual.

29.     At no point in time did Lux or Nunez advise orally that the mileage was "not actual."

30.     Ms. Rodriguez was unaware of the "not actual" selections at the time of the purchase as she was tired and rushed through signing the documents to leave the dealership's premises.

31.     The oral representations were made with the express intent to defraud Ms. Rodriguez.

32.     The use of the "not actual" designations on the odometer disclosures and agreements prepared by Lux was part and parcel of the fraudulent scheme implemented by Nunez and carried out by Lux.

33.     Within five days of the purchase of the Subject Vehicle, the engine became inoperable.

34.     As a result of the engine failure, Ms. Rodriguez informed Lux that she no longer wanted the Subject Vehicle via phone call within five days of her purchase.

35.     Ms. Rodriguez determined that the mileage had been tampered with following these significant mechanical defects coming to light within days of the purchase.

36.     Ms. Rodriguez submitted a complaint to the Florida Department of Highway Safety and Motor Vehicles (the "**DHSMV**").

37.     The DHSMV concluded that Lux purchased the Subject Vehicle with approximately 156,000 miles.

38.     The DHSMV further concluded that Lux sold the Subject Vehicle with 72,576 miles.

39.     The DHSMV determined the reduction in displayed mileage on the odometer for the Subject Vehicle occurred while the vehicle was in Lux's possession.

40.     During the investigation process, the DHSMV communicated with Nunez who responded on behalf of Lux.

41.     After first denying that the cluster had been replaced, Nunez, acting for Lux, advanced a story that, *inter-alia,* the odometer for the Subject Vehicle had been replaced by a mechanic.

42.     To support this explanation, Nunez produced a purported invoice for a "used" instrument cluster from Gardner Auto Parts.

43.     This attempted cover-up cemented liability because it revealed non-compliance with 49 U.S.C. § 32704.

44.     Even if Nunez's narrative had been plausible, it collapsed when Gardner Auto Parts denied issuing the invoice.

45.     Gardner confirmed that the document bore alterations, including an incorrect VIN.

46.     The DHSMV confirmed the invoice was not genuine. *Id.*

47.     The DHSMV confirmed it did not originate with Gardner Auto Parts. *Id.*

48.     The DHSMV ultimately issued citations for multiple violations, including odometer tampering, providing false odometer information, and possession of a vehicle with an altered odometer with intent to defraud.

49.     The DHSMV issued a written outcome letter memorializing its findings. *See* Exhibit A.

50.     Nunez personally advanced the "replacement cluster" cover up story. *Id.*

51.     Nunez personally supplied the altered invoice and work order to the DHSMV. *Id.*

52.     Upon information and belief, Nunez directed and personally participated in the preparation of the false paperwork given to the DHSMV.

53.     This included presenting a doctored invoice to support the replacement cluster cover up story.

54.     The odometer rollback was never disclosed as a lawful replacement with required labeling and documentation under federal law. *Id.*

55.     Nunez was the decision-maker who authorized the Subject Vehicle to be marketed

and sold with the reduced mileage reading.

56.    Nunez instructed and conspired with sales staff to market the Subject Vehicle with 72,576 miles.

57.    Nunez knew the true mileage of the Subject Vehicle from Lux's acquisition paperwork.

58.    Nunez ensured that the misrepresentation would be incorporated into the sales transaction.

59.    Nunez orchestrated, directed, and approved the acts necessary to carry out the above-described scheme.

60.    Nunez personally benefitted from the profits realized by selling a high-mileage vehicle as though it had substantially fewer miles.

61.    Nunez exercised operational control over the Subject Vehicle's reconditioning and titling as the owner and principal of the dealership.

62.    Nunez caused, procured, or had the odometer disconnected, reset, altered, or replaced without lawful compliance.

63.    Nunez later submitted an altered, non-authentic invoice to regulators in an effort to conceal the misconduct. *Id.*

64.    Upon information and belief, tampering with odometers and the sale of vehicles with tampered odometers is a regular business practice of Lux.

65.    All conditions precedent to instituting this action have occurred or have otherwise been waived.

66.    Ms. Rodriguez has retained the undersigned law firm and has obligated herself to pay a reasonable fee for its services.

67.    Ms. Rodriguez reserves the right to amend the complaint following discovery and subsequent proffer to discern the identity of any other co-conspirators to Lux's fraudulent scheme to violate the Act.

**COUNT I**
**ACTION FOR VIOLATION OF THE FEDERAL ODOMETER ACT**
**(As to Dealership)**

68.    This is an action for violation of the Federal Odometer Act, also known as the "Federal Motor Vehicle Information and Cost Savings Act," 49 U.S.C. §32710, *et seq.* ("**Odometer Act**" or "**Act**"), and the regulations promulgated thereunder. Specifically, this count addresses Lux's violation of the Act's anti-tampering requirements of 49 U.S.C. §32703, not on a claim of non-disclosure under 49 U.S.C. §32705.

69.    Ms. Rodriguez realleges and reaffirms the allegations contained in Paragraphs 1 through 68 above as if set forth hereat in full.

70.    Lux is a "person" and a "transferor" as contemplated under the Act and implementing regulations.

71.    The transaction to sell the Subject Vehicle to Ms. Rodriguez is a "transfer" as contemplated by the Act and implementing regulations.

72.    Pursuant to 49 U.S.C. §32703, a person may not *inter alia*:

> (1) advertise for sale, sell, use, install, or have installed, a device that makes an odometer of a motor vehicle register a mileage different from the mileage the vehicle was driven, as registered by the odometer within the designed tolerance of the manufacturer of the odometer;
>
> (2) disconnect, reset, alter, or have disconnected, reset, or altered, an odometer of a motor vehicle intending to change the mileage registered by the odometer;
>
> (3) with intent to defraud, operate a motor vehicle on a street, road, or highway if

the person knows that the odometer of the vehicle is disconnected or not operating; or

(4) conspire to violate this section or section 32704 or 32705 of this title.

73.     On or about November 21, 2024, Lux acquired the Subject Vehicle from IAAI with approximately 156,000 miles reflected on the Florida title and IAA paperwork, and IAAI photographs.

74.     From acquisition through the February 7, 2025 sale to Ms. Rodriguez, the Subject Vehicle remained in Lux's exclusive care, custody, or control for intake, reconditioning, titling, and resale.

75.     While the Subject Vehicle was in Lux's possession, Lux disconnected, reset, altered, or had caused the disconnection, resetting, or alteration of the odometer with intent to change the number of miles registered, reducing the indicated mileage by approximately 83,000 miles, in violation of 49 U.S.C. § 32703(2).

76.     Lux's disconnection, resetting, or alteration of the odometer with intent to change the number of miles registered was undertaken with the express intent to defraud the general consuming public, including Ms. Rodriguez, by increasing the Subject Vehicle's desirability and value by virtue of the lower mileage reading.

77.     Lux represented both orally and in writing that the mileage for the Subject Vehicle was 72,576.

78.     At no point in time did Lux orally disclose to Ms. Rodriguez that odometer had been disconnected, reset, or altered.

79.     At no point in time did Lux orally disclose to Ms. Rodriguez that the odometer reading was inaccurate.

80.     The DHSMV's investigation corroborated that the drastic reduction of mileage disclosed on the Subject Vehicle's odometer occurred while the Subject Vehicle was in the possession of the dealer and that paperwork proffered to justify a "replacement cluster" included an altered, non-genuine invoice bearing incorrect VIN information. Ex. A.

81.     As a direct and proximate result of the above-described actions, Dealership violated the Act with the intent to defraud.

82.     As a result of the violation of the Act with intent to defraud, Dealership is liable to Ms. Rodriguez in an amount equal to three times actual damages or $10,000.00, whichever is greater, plus attorney's fees and costs pursuant to 49 U.S.C. §32710.

83.     Ms. Rodriguez has retained the undersigned attorney and is obligated to pay said attorney a reasonable fee for his services.

**WHEREFORE**, Plaintiff, MARIA C. RODRIGUEZ, an individual, demands judgment against Defendant, LUX SEVEN AUTO SALES, CORP., a Florida corporation, for damages, together with attorney's fees and costs pursuant to 49 U.S.C. §32710.

<u>**COUNT II**</u>
<u>**ACTION FOR VIOLATION OF THE FEDERAL ODOMETER ACT**</u>
**(As to Dealership)**

84.     This count addresses Lux's violation of the Act's service, repair, and replacement requirements of 49 U.S.C. §32704, not on a claim of non-disclosure under 49 U.S.C. §32705.

85.     This Count is plead in the alternative to Count I.

86.     Ms. Rodriguez realleges and reaffirms the allegations contained in Paragraphs 1 through 68 above as if set forth hereat in full.

87.     Lux is a "person" and a "transferor" as contemplated under the Act and implementing

regulations.

88.    The transaction to sell the Subject Vehicle to Ms. Rodriguez is a "transfer" as contemplated by the Act and implementing regulations.

89.    Pursuant to 49 U.S.C. §32704, a person may service, repair or replace the odometer of a motor vehicle if the mileage registered by the odometer remains the same as before the service, repair or replacement. If the mileage registered cannot remain the same -

> (1) a person shall adjust the odometer to read zero; and,
> (2) the owner of the vehicle or agent of the owner shall attach written notice to the left door frame of the vehicle specifying the mileage before the service, repair or replacement and the date of service, repair or replacement.

90.    On or about November 21, 2024, Lux acquired the Subject Vehicle from IAAI with approximately 156,000 miles reflected on the Florida title and IAAI paperwork, and approximately 156,000 miles reflected in IAAI photographs.

91.    From acquisition through the February 7, 2025 sale to Ms. Rodriguez, the Subject Vehicle remained in Lux's exclusive care, custody, or control for intake, reconditioning, titling, and resale.

92.    While the Subject Vehicle was in Lux's possession, Lux repaired or replaced, or caused the repair or replacement of the Subject Vehicle's odometer with an odometer displaying 72,576 miles, reducing the indicated mileage by approximately 83,000 miles.

93.    Lux failed to comply with 49 U.S.C. § 32704 and implementing regulations by (a) failing to keep the mileage the same as before the service, and (b) failing to reset the odometer to zero and failing to provide and affix the required written notice stating the prior mileage and the date of service.

94.     Lux's repair or replacement of the odometer with intent to change the number of miles registered thereon was undertaken with the express intent to defraud the general consuming public by increasing the desirability and value of the Subject Vehicle by virtue of the lower mileage reading.

95.     Lux represented both orally and in writing that the mileage for the Subject Vehicle was 72,576.

96.     At no point in time did Lux orally disclose to Ms. Rodriguez that odometer had been disconnected, reset, or altered.

97.     At no point in time did Lux orally disclose to Ms. Rodriguez that the odometer reading was inaccurate.

98.     The DHSMV's investigation corroborated that the drastic reduction of mileage disclosed on the Subject Vehicle's odometer occurred while the vehicle was in the possession of the dealer and that paperwork proffered to justify a "replacement cluster" included an altered, non-genuine invoice bearing incorrect VIN information. Ex. A.

99.     As a direct and proximate result of the above-described actions, Dealership violated the Act with the intent to defraud.

100.    As a result of the violation of the Act with intent to defraud, Dealership is liable to Ms. Rodriguez in an amount equal to three times actual damages or $10,000.00, whichever is greater, plus attorney's fees and costs pursuant to 49 U.S.C. §32710.

101.    Ms. Rodriguez has retained the undersigned attorney and is obligated to pay said attorney a reasonable fee for his services.

**WHEREFORE**, Plaintiff, **MARIA C. RODRIGUEZ**, an individual, demands judgment

against Defendant, **LUX SEVEN AUTO SALES, CORP.**, a Florida corporation, damages, together with attorney's fees and costs pursuant to 49 U.S.C. §32710.

**COUNT III**
**ACTION FOR VIOLATION OF THE FEDERAL ODOMETER ACT**
**(As to Nunez)**

102.     This count addresses Nunez's engagement in a conspiracy with Lux to violate 49 U.S.C. § 32704 and 49 U.S.C. §32703(2), brought pursuant to 49 U.S.C. § 32703(4).

103.     Ms. Rodriguez realleges and reaffirms the allegations contained in Paragraphs 1 through 68 above as if set forth hereat in full.

104.     The Federal Odometer Act expressly prohibits not only direct tampering but also participation in, or facilitation of, such unlawful conduct. Specifically, 49 U.S.C. § 32703(4) makes it unlawful for any person to, *inter-alia*, "conspire to violate" acts prohibited under § 32704 or 49 U.S.C. §32703(2).

105.     Nunez is subject to civil liability under 49 U.S.C. § 32710 for violations he conspired to commit.

106.     Nunez is a "person" and a "transferor" as contemplated under the Act and implementing regulations.

107.     The transaction to sell the Subject Vehicle to Ms. Rodriguez is a "transfer" as contemplated by the Act and implementing regulations.

108.     At all material times, Nunez exercised operational control over Lux's acquisition, reconditioning, titling, and sale processes for the Subject Vehicle.

109.     Nunez knew, from Lux's acquisition records including the Florida title and IAAI paperwork and photographs, that the Subject Vehicle had approximately 156,000 miles at

acquisition in November of 2024.

110.    In furtherance of the conspiracy, and with intent to defraud, Nunez directed, procured, encouraged, and caused Lux's employees or third parties to disconnect, reset, alter, replace, or otherwise manipulate the odometer/instrument cluster to reduce the indicated mileage while the Subject Vehicle was in Lux's possession, custody and control, or by having such acts performed on Lux's behalf.

111.    In violation of 49 U.S.C. § 32703(4), Nunez knowingly and intentionally conspired with Lux to violate 49 U.S.C. § 32704 by agreeing that the Subject Vehicle would be marketed and sold using a materially reduced mileage figure  and by taking overt acts in furtherance of that agreement.

112.    In violation of 49 U.S.C. § 32703(4), Nunez knowingly and intentionally conspired with Lux to violate 49 U.S.C. § 32704 by agreeing to conceal the unlawful service, repair, or replacement of the Subject Vehicle's odometer, including by deliberately refraining from providing the written notice and labeling required by § 32704 and its implementing regulations.

113.    In furtherance of the conspiracy, Nunez personally denied having replaced or tampered with the odometer cluster and then later advanced a false "replacement cluster" narrative and supplied regulators with an altered invoice purporting to justify the change, which DHSMV determined did not originate from the purported vendor and bore altered VIN information.

114.    Nunez acted with intent to defraud purchasers, including Ms. Rodriguez, by advertising and selling the Subject Vehicle with a materially reduced mileage figure and concealing the true mileage by failing to orally advise Ms. Rodriguez that the odometer was not accurate, thereby inflating the Subject Vehicle's perceived value, and marketability.

115.    Nunez's violations and participation in the violations directly and proximately

caused Ms. Rodriguez's damages.

116.     Pursuant to 49 U.S.C. § 32710, Ms. Rodriguez is entitled to recover from Nunez the greater of treble actual damages or $10,000, together with reasonable attorney's fees and costs.

**WHEREFORE**, Plaintiff, **MARIA C. RODRIGUEZ**, an individual, demands judgment against Defendant, **LUIS NUNEZ**, an individual, for statutory and actual damages, together with attorney's fees and costs pursuant to 49 U.S.C. §32710.

**DEMAND FOR JURY TRIAL**

Plaintiff, **MARIA C. RODRIGUEZ**, an individual, pursuant to Rule 38(b), Federal Rule of Civil Procedure, hereby demands a trial by jury of all issues so triable.

Respectfully submitted,

/s/ Joshua E. Feygin

**JOSHUA FEYGIN, ESQ.**
FL Bar No.: 124685
Email:  Josh@JFeyginesq.com
**SUE YOUR DEALER – A LAW FIRM**
4601 Sheridan St #205
Hollywood, FL 33021
Tel: (954) 228-5674
Fax: (954) 697-0357
*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on January 20, 2026, the above document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing or in some other authorized manner for those counsel or parties who cannot receive electronically Notices of Filing.

Page **15** of **16**

/s/ Joshua E. Feygin

**JOSHUA FEYGIN, ESQ.**
FL Bar No.: 124685

**SERVICE LIST**

All counsel of record via email.