UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CASE NO.: 8:25-cv-02530-JSM-LSG

**MARIA C. RODRIGUEZ,**
**an Individual,**

      Plaintiff,

v.

**LUX SEVEN AUTO SALES, CORP.,**
**A Florida Profit Corporation,**
**and LUIS NUNEZ,**
**an individual,**

      Defendants.

_____/

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR LEAVE TO FILE THIRD-PARTY COMPLAINT

**INTRODUCTION**

Defendants Lux Seven Auto Sales, Corp. ("Lux") and Luis Nunez ("Nunez") (collectively, "Defendants") move for leave to file a third-party complaint against Yoisbel Perez, Roiler Sehara Rodriguez, and Hec Mar Auto Services Corp., seeking to implead these individuals and entities as parties purportedly responsible for the odometer tampering at the heart of this case. The motion should be denied. It fails on the law, it fails on the facts, and it fails because the substantive right upon which it depends (contribution) does not exist in this context.

This is a federal question case. Plaintiff Maria C. Rodriguez brings her claims exclusively under the Federal Odometer Act, 49 U.S.C. §§ 32701 *et seq.* There are no state law claims. The Federal Odometer Act contains no contribution provision, and Congress has not authorized courts to create one. Even if it had, the state contribution statute upon which Defendants rely, Florida's Uniform Contribution Among Tortfeasors Act, Fla. Stat. § 768.31, has no application in a federal statutory case with no state law claims.

Beyond the contribution question, Defendants' motion fails Rule 14's requirement that a proposed third-party defendant be derivatively liable to the defendant for the plaintiff's claim against it. Impleader is available only when the third party's liability is secondary to and dependent upon the outcome of the defendant's own liability to the plaintiff. Defendants' motion does not satisfy that standard. Their factual narrative, that Perez orchestrated the transaction, Sehara performed the odometer work, and Lux merely completed the paperwork, is not a contribution theory; it is an assertion that Lux is not liable at all. That is a defense, not a basis for impleader.

The factual narrative advanced by the motion is also directly contradicted by the record. The Florida Department of Highway Safety and Motor Vehicles ("DHSMV") conducted an independent investigation and determined that the odometer reduction occurred while the Subject Vehicle was in Lux's possession. (Doc. 19-1 at 5.) Defendants' own interrogatory responses

confirm that the title never passed to Perez, that Nunez personally signed the title transfer on behalf of Lux, and that Nunez selected the "NOT ACTUAL" mileage designation. (Def. Supp. Resp. to Interrogatories at 4.) Nunez also personally advanced a false "replacement cluster" cover story to DHSMV investigators and submitted an altered invoice bearing an incorrect VIN that did not originate from the purported vendor. (Doc. 19-1 at 5.)

For all of these reasons, the motion should be denied.

**BACKGROUND**

### i.  The Transaction and Plaintiff's Claims

On November 19, 2024, Lux purchased a 2018 Ford Escape, VIN ending in 36888 (the "Subject Vehicle"), from Insurance Auto Auctions ("IAAI"). (Def. Supp. Resp. to Interrogatories at 3-4.) The Florida title and IAAI paperwork executed at the time of acquisition annotated the odometer at 156,650 miles. (Doc. 19-1 at 4.) IAAI photographs confirmed a reading of 156,560 miles. (Doc. 19-1 at 4.) Lux placed the Subject Vehicle into its exclusive care, custody, and control following acquisition.

On February 7, 2025, Lux transferred the Subject Vehicle to Plaintiff. (Def. Supp. Resp. to Interrogatories at 4.) The odometer disclosure statement and all related sale documents reflected a mileage of 72,576 miles, a reduction of approximately 83,984 miles from the mileage documented at acquisition. (Doc. 19-1 at 4.) Nunez personally signed the title transfer on behalf of Lux. (Def. Supp. Resp. to Interrogatories at 4.) Nunez personally selected the "NOT ACTUAL" mileage designation on the odometer disclosure. (*Id.*) Within five days of the purchase, the engine became inoperable.

Plaintiff filed a complaint with the DHSMV. Following an independent investigation during which Investigator Raymond Reyes communicated directly with Nunez, (Doc. 19-1 at 4.), the DHSMV reached the following findings: the IAAI title annotated the mileage at 156,650 and

IAA photographs annotated the mileage at 156,560 at the time of Lux's acquisition, (Doc. 19-1 at 4.); the Separate Odometer Disclosure Statement annotated the mileage at 72,576 marked "NOT ACTUAL," reflecting a rollback of 83,984 miles, (Doc. 19-1 at 4.); and the odometer was rolled back while in the possession of the dealer, (Doc. 19-1 at 5.). The DHSMV issued citations against Lux for odometer tampering, providing false odometer information, and possession of a vehicle with an altered odometer with intent to defraud. (Doc. 19-1 at 3-5.)

During the investigation, Nunez first denied that the odometer cluster had been replaced, then advanced a narrative that a mechanic had replaced it. He personally supplied the DHSMV with a purported invoice from a auto parts supplier for a used speedometer instrument cluster. (Doc. 19-1 at 5.) The invoice bore a VIN number with only 16 digits, when a VIN normally contains 17. (Doc. 19-1 at 5.) Investigator Reyes contacted the supplier directly and confirmed that "the invoice number provided did not belong to them at all." (Doc. 19-1 at 5.) The supplier subsequently confirmed in writing that the invoice was not theirs. (Doc. 19-1 at 5.) The investigator concluded that the invoice was confirmed fraudulent. (Doc. 19-1 at 5.) The DHSMV issued a written Investigative Report memorializing these findings and findings of multiple statutory violations, approved by the Regional Administrator on July 2, 2025. (Doc. 19-1 at 1, 5.)

### ii. Plaintiff's Federal Odometer Act Claims

Plaintiff brings three counts exclusively under the Federal Odometer Act, 49 U.S.C. §§ 32701 *et seq.* There are no state law claims. Jurisdiction rests on federal question jurisdiction under 28 U.S.C. §§ 1331 and 1337.

Count I charges Lux with violating 49 U.S.C. § 32703(2), which makes it unlawful for any person to "disconnect, reset, alter, or have disconnected, reset, or altered, an odometer of a motor vehicle intending to change the mileage registered by the odometer." 49 U.S.C. § 32703(2). Lux was the transferor of the Subject Vehicle. As the transferor, Lux's liability under § 32703 is direct:

it attaches by virtue of Lux's role in disconnecting, resetting, or altering the odometer, or causing such acts to be performed, while the vehicle was in its exclusive possession, with intent to defraud.

Count II charges Lux with violating 49 U.S.C. § 32704, which requires that when an odometer is serviced, repaired, or replaced and the mileage cannot remain the same, the owner must reset the odometer to zero and attach written notice to the vehicle's door frame specifying the prior mileage and date of service. 49 U.S.C. § 32704. Lux replaced or caused replacement of the odometer with a unit displaying 72,576 miles and failed entirely to reset to zero or affix the required notice. Count II is pled in the alternative to Count I.

Count III charges Nunez individually with conspiracy under 49 U.S.C. § 32703(4), which makes it unlawful for any person to "conspire to violate" sections 32703 or 32704. 49 U.S.C. § 32703(4). Nunez is the president of Lux and exercised operational control over the acquisition, reconditioning, titling, and sale of the Subject Vehicle. Nunez personally authorized the acquisition from IAAI, signed the acquisition title, and selected "NOT ACTUAL" at acquisition. (Def. Supp. Resp. to Interrogatories at 3.) He personally signed the transfer title at sale and selected "NOT ACTUAL" at sale. (*Id.* at 4.) In furtherance of the conspiracy, Nunez directed or caused third parties to manipulate the odometer while the vehicle was in Lux's possession and supplied fraudulent documentation to regulators to conceal the scheme. Each defendant's liability under the Act is separate and individual. *Ferris v. Haymore,* 967 F.2d 946, 957-58 (4th Cir. 1992). The Act provides that any person who violates it with intent to defraud is liable for three times actual damages or $10,000, whichever is greater, plus attorney's fees. 49 U.S.C. § 32710(a).

### iii. Defendants' Motion and the Narrative It Advances

Defendants now seek leave to implead Yoisbel Perez, Roiler Sehara Rodriguez, and Hec Mar Auto Services Corp.[1] Their motion asserts that Perez contacted Nunez to purchase a vehicle at auction. (Mot. para. 3.) The vehicle was transported to Perez after acquisition. (Mot. para. 4.) Perez subsequently "engaged" Sehara and Hec Mar to perform services on the vehicle "including odometer work." (Mot. para. 5.) Perez then brought the vehicle back to Lux for the sole purpose of completing the paperwork. (Mot. para. 6.) According to the motion, Lux's only interaction with Plaintiff was the day of closing. (Mot. para. 8.)

This narrative is squarely contradicted by the DHSMV's investigative findings, Defendants' own discovery responses, and the documentary record. It is also, as explained below, legally insufficient to support the requested impleader.

## LEGAL ARGUMENT

### A. RULE 14 REQUIRES DERIVATIVE LIABILITY

Federal Rule of Civil Procedure 14(a)(1) permits a defendant to implead a nonparty "who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a)(1). The Eleventh Circuit has held that impleader "is only available when the third party defendant's liability is secondary to, or a derivative of, the original defendant's liability on the original plaintiff's claim." *Faser v. Sears, Roebuck & Co.,* 674 F.2d 856, 860 (11th Cir. 1982) (citing *United States v. Joe Grasso & Son, Inc.,* 380 F.2d 749, 751 (5th Cir. 1967)).

The former Fifth Circuit, whose decisions are binding on this Court, held that "an entirely separate and independent claim cannot be maintained against a third party under Rule 14, even

---

[1] Notably, Defendants filed their motion without attaching a proposed third-party complaint. Neither the Court nor the Plaintiff have a proposed pleading to evaluate for legal sufficiency, derivativeness, or viability of the asserted claims. It logically follow that this deficiency independently undermines the motion, as the Court cannot exercise its discretion under Rule 14 with respect to claims it has not been permitted to review.

though it does arise out of the same general set of facts as the main claim." *Joe Grasso & Son,* 380 F.2d at 751. The Fifth Circuit further held that impleader requires the third party's potential liability to be "dependent upon the outcome of the main claim," and that a claim fails where it is "separate and independent" from the main claim even where it arises from similar facts. *Southeast Mortg. Co. v. Mullins,* 514 F.2d 747, 749 (5th Cir. 1975).

Impleader also requires that a viable substantive right of contribution or indemnity exist as a matter of law. Rule 14 is a procedural device; it does not create the underlying substantive right it is meant to enforce. If no such right exists, there is no predicate for impleader regardless of how the motion is framed. *See Texas Indus., Inc. v. Radcliff Materials, Inc.,* 451 U.S. 630, 640-41 (1981).

## B.  THERE IS NO RIGHT OF CONTRIBUTION UNDER THE FEDERAL ODOMETER ACT.

Defendants ground their contribution theory in Fla. Stat. § 768.31, Florida's Uniform Contribution Among Tortfeasors Act. This reliance is misplaced as a matter of law for two independent reasons. First, section 768.31 is a state tort contribution statute, and this case arises exclusively under federal law with no state law claims, the statute has no foothold here. Second, even if a contribution right could exist in a federal odometer case, it would have to arise under federal law, and neither the Federal Odometer Act nor federal common law provides one.

### i.  Florida's contribution statute has no application in a federal question case.

This case arises exclusively under federal law. Every count in the Amended Complaint is brought under the Federal Odometer Act, 49 U.S.C. §§ 32703, 32704, and 32710- no tort claim, and no Florida cause of action, is pleaded.

That is fatal to Defendants' reliance on Fla. Stat. § 768.31, which creates a right of contribution only "when two or more persons become jointly or severally liable in tort for the same

injury to person or property." § 768.31(2)(a). There is no tort claim in this case. There is no Florida law cause of action to which § 768.31 could attach. Defendants cannot import that state tort framework into a purely federal statutory action where it has no foothold.

### ii. The Federal Odometer Act contains no contribution right

Because this is a federal question case, any right of contribution among Federal Odometer Act defendants would have to arise under federal law. A federal right of contribution may be created by statute, either expressly or impliedly, or by federal common law. *Nw. Airlines, Inc. v. Transp. Workers of America, AFL-CIO*, 451 U.S. 77, 90-91 (1981). The Federal Odometer Act, 49 U.S.C. §§ 32701-32711, is entirely silent on contribution. Congress created a specific liability and remedial framework providing for treble damages or $10,000 per violation, whichever is greater, plus attorney's fees, directed at persons who violate the Act with intent to defraud. 49 U.S.C. § 32710(a). It created no contribution mechanism.

The Supreme Court's decision in *Texas Indus.,* 451 U.S. 630, is instructive. In *Texas Indus.,* an antitrust defendant filed a third-party complaint against alleged co-conspirators seeking contribution if found liable. *Id.* at 632-33. The Supreme Court affirmed dismissal, holding that there was "no basis in federal statutory or common law for allowing federal courts to fashion the right to contribution" among federal statutory wrongdoers. *Id.* at 646-47. The Court held that a right of contribution in a federal statutory case can only exist through express or clearly implied congressional authorization in the statute, or through the power of federal courts to create federal common law in areas involving uniquely federal interests. *Id.* at 640-41. The Court further held that the treble damages remedy evidenced Congress's intent not to soften liability among joint wrongdoers. *Id.* at 639-40.

The parallel to the Federal Odometer Act is direct. The Act provides for treble damages or $10,000, whichever is greater. 49 U.S.C. § 32710(a). It makes no reference to contribution and

contains no contribution mechanism. 49 U.S.C. §§ 32701-32711. Under *Texas Indus.,* 451 U.S. at 640-41, that congressional silence forecloses the contribution right Defendants seek to assert.

No binding Eleventh Circuit precedent addresses whether the Federal Odometer Act permits contribution or indemnification among defendants, as far as Plaintiff has been able to ascertain. And, much of the out-of-circuit authority suggests the opposite.

In *Stier v. Park Pontiac, Inc.,* 391 F. Supp. 397 (S.D. W. Va. 1975) the court held that the Act's language imposing liability on "any person" who violates its provisions "indicates no intent to limit liability to the immediate seller of a motor vehicle, but to extend liability to and impose liability upon any person violating the law." *Id.* at 401. On the cross-claim question, the court held that Congress did not intend "that each subsequent wrongdoer in a chain of violations might hold liable each prior wrongdoer in the chain linked to a single, initial odometer tampering." *Id.* The court reasoned that permitting such recoveries would allow later violators to profit from earlier ones and encourage subsequent wrongdoers to ignore prior violations, and that a later violator "approves and ratifies the acts of previous wrongdoers when he continues the deception instead of discovering and reporting it" and therefore in equity should not be allowed to profit from those acts. *Id.*

*Mataya v. Behm Motors, Inc.,* 409 F. Supp. 65 (E.D. Wis. 1976), applied *Stier* directly to dismiss all cross-claims among co-defendants in an odometer fraud action. The court identified the structural error in contribution theory as applied to the Act:

> The theory of these cross-claims is that if a defendant is found to be liable to the plaintiff, then the other defendants will be liable to him on a theory of contribution or indemnity. The error in this theory is that it assumes that liability under the Act is somehow ancillary or derivative, and that plaintiff is entitled to only a single recovery.

*Id.* at 70.

9

To the contrary, the court held, each defendant is separately and directly subject to the Act's full liability, not derivatively, and not as a share of a single pool. *Id.* Because liability is separate and individual rather than shared, "[t]his phenomenon of separate and individual liability precludes recovery on a cross-claim based on indemnification or contribution." *Id.* The court dismissed not only the cross-claims specifically challenged, but also, in the interests of judicial economy, all remaining cross-claims in the action. *Id.*

*Charnetsky v. Gus Paulos Chevrolet, Inc.,* 754 F. Supp. 188 (D. Utah 1991), held that "co-defendant wrongdoers are prohibited by law from advancing cross-claims against other co-defendants based on the federal odometer laws." *Id.* at 190-91. The court addressed and rejected the same argument Defendants advance here: that a defendant claiming innocence in the chain of bad odometer statements should be permitted to seek relief from the party that deceived it. *Id.* at 191. The court rejected that argument, finding that the defendant's receipt of an incomplete and unsigned odometer statement imposed a legal duty to investigate or disclose, and that its failure to do so made it a wrongdoer foreclosed from asserting cross-claims. *Id.*

The Fourth Circuit directly addressed the contribution question in Ferris. Relying on Stier, Mataya, and Charnetsky, the court held expressly that the Act "imposes separate and individual liability for treble damages on each defendant who violates its proscriptions." Ferris, 967 F.2d at 957. The court held that "[j]udicial notions of fairness and equity must yield to the prophylactic policies of the treble-damage remedy," Burlington Indus., Inc. v. Milliken & Co., 690 F.2d 380, 393 (4th Cir. 1982), and that Congress showed no concern with "softening the blow on joint wrongdoers," Texas Indus., 451 U.S. at 639, quoted in Ferris, 967 F.2d at 957-58. The court further held that the Act, "especially given its dual purposes of compensating defrauded purchasers and

10

punishing tamperers, imposes separate and individual treble damages liability on each person who violates its proscriptions." Id. at 958.

The Fifth Circuit reached the same fundamental conclusion in *Alley v. Chrysler Credit Corp.,* 767 F.2d 138 (5th Cir. 1985). Relying on *Mataya* and *Stier,* the Fifth Circuit held that separate issuers of false odometer statements in a vehicle's chain of title are not "solidary obligors" under the Act, meaning they bear separate and individual obligations rather than a shared joint obligation. *Id.* at 141-42. Because defendants are not solidary obligors, one defendant cannot benefit from a release granted to another. *Id.* The Fifth Circuit's reasoning confirms that defendants do not share a single pooled liability from which contribution could be drawn. *See id.; Ferris,* 967 F.2d at 957-58.

*Stier, Mataya, Charnetsky, Ferris,* and *Alley* are grounded in the same conceptual analysis: the Act imposes liability on "any person" who violates it with intent to defraud, each violator is separately subject to the full statutory penalty, and nothing in the Act's text or structure creates a mechanism for one wrongdoer to shift or share that liability with another. No binding Eleventh Circuit precedent forecloses that conclusion. The Eleventh Circuit has, however, held that the Act is "remedial legislation that should be broadly construed to effectuate its purpose." *Owens v. Samkle Auto. Inc.,* 425 F.3d 1318, 1322 (11th Cir. 2005) (quoting *Ryan v. Edwards,* 592 F.2d 756, 760 (4th Cir. 1979)). A contribution right that permits one odometer fraud defendant to shift its liability to another would directly undermine that purpose. *See Ferris,* 967 F.2d at 957-58.

## C. THE PROPOSED IMPLEADER FAILS RULE 14'S DERIVATIVE LIABILITY REQUIREMENT.

Even if a contribution right existed, which it does not, the motion would still fail because Defendants have not satisfied Rule 14's derivative liability requirement.

### i. Defendants' own narrative is inconsistent with the premise of impleader.

11

Impleader presupposes that a defendant may be found liable to the plaintiff. *Faser,* 674 F.2d at 860 ("[i]f the defendant has no liability to the plaintiff, then the third party defendant has no liability to the defendant-third party plaintiff"). The third party's derivative liability flows from and is conditioned upon the defendant's own liability. *Id.*

Defendants' motion does not assert that Perez and Sehara are secondarily liable for Lux's liability. Rather, it intimates that Perez and Sehara are primarily responsible and that Lux bears no real culpability. Defendants stated in their supplemental interrogatory response: "Defendant LUX SEVEN's first and only interaction with Plaintiff was the day of closing and title transfer." (Def. Supp. Resp. to Interrogatories at 4.) The motion advances the same theory: that Perez controlled the vehicle, Perez engaged the mechanic, Perez orchestrated the transaction, and Lux merely completed a title transfer as a innocent bystander. (Mot. paras. 3-8.)

Defendants' own narrative defeats the impleader premise. Impleader requires that the third party's liability be derivative of the defendant's own liability to the plaintiff -- if the defendant has no liability to the plaintiff, the third party has no liability to the defendant. *Faser*, 674 F.2d at 860. Defendants cannot have it both ways. Either Lux bears liability to Rodriguez that may be passed through to Perez and Sehara, or it does not. Defendants cannot use Rule 14 as a fallback hedge while simultaneously denying any meaningful liability.

### B. The Federal Odometer Act imposes direct, non-derivative liability.

The Federal Odometer Act creates a direct cause of action against the transferor, that is, the entity that transferred the vehicle to the buyer with a false odometer reading and intent to defraud. 49 U.S.C. §§ 32703, 32705, 32710. Lux was the transferor. Lux signed the title. (Def. Supp. Resp. to Interrogatories at 4.) Nunez, on behalf of Lux, completed the odometer disclosure and selected the "NOT ACTUAL" designation. (*Id.*) Lux collected the sale proceeds. The Act's liability attaches at the moment of transfer and attaches to the transferor. 49 U.S.C. § 32710(a).

12

The Act does not require that the defendant personally perform the tampering. Section 32703(4) expressly prohibits conspiring to violate the Act's tampering and replacement provisions. 49 U.S.C. § 32703(4). Nunez directed or caused third parties to manipulate the odometer while the vehicle was in Lux's possession, and supplied fraudulent documentation to regulators to conceal the scheme. Lux's liability under the Act is therefore direct and primary, not contingent on what Perez or Sehara may have done independently.

Where a defendant's liability is direct and statutory, not derived from the acts of the proposed third-party defendant, there is no basis for impleader. *Southeast Mortg. Co.,* 514 F.2d at 749 (impleader requires the third party's liability to be "dependent upon the outcome of the main claim"). This is precisely the structural error *Mataya* identified in contribution theory under the Act: the assumption "that liability under the Act is somehow ancillary or derivative." 409 F. Supp. at 70. It is not. Lux's (and Nunez's) liability to Rodriguez does not depend on whether Sehara performed the odometer work. It depends on whether Lux transferred a vehicle with a false odometer reading with intent to defraud, a question answered by Lux's own conduct as transferor, not by Sehara's.

The record confirms this. The DHSMV, a state agency with statutory authority to investigate odometer fraud, independently investigated and concluded that the odometer was rolled back while the vehicle was in Lux's possession. (Doc. 19-1 at 5.) Defendants' own interrogatory responses confirm that the title never passed to Perez at any point in the chain of title; Lux purchased the vehicle, held it, and transferred it directly to Plaintiff. (Def. Supp. Resp. to Interrogatories at 4.) Whatever role Perez may have played, the record establishes that Lux was the owner, the custodian, and the transferor, and that the rollback occurred on Lux's watch. Lux's

13

liability, if established, will rest on that conduct, not on anything Perez or Sehara did independently.

## CONCLUSION

Defendants' motion fails at every level. There is no substantive right of contribution under the Federal Odometer Act, as neither the statute nor federal common law provides one, and Florida's state tort contribution statute is inapplicable in a federal question case with no state law claims. *See Texas Indus.,* 451 U.S. at 640-41; *Ferris,* 967 F.2d at 957-58; *Stier,* 391 F. Supp. at 401; *Mataya,* 409 F. Supp. at 70; *Charnetsky,* 754 F. Supp. at 190-91; *Alley,* 767 F.2d at 141-42. The proposed impleader does not satisfy Rule 14's derivative liability requirement because Defendants' own narrative positions Perez and Sehara as the primary wrongdoers, not parties secondarily liable for Lux's liability to Plaintiff. *See Faser,* 674 F.2d at 860. The Federal Odometer Act imposes direct, primary liability on Lux as the transferor, and the DHSMV's independent finding that the odometer was rolled back while in Lux's possession confirms that Lux's liability will be decided by its own conduct, not by what Perez or Sehara may have done. (Doc. 19-1 at 5.) The motion should be denied.

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendants' Motion for Leave to File Third-Party Complaint.

Respectfully submitted,

SUE YOUR DEALER - A LAW FIRM
Counsel for Plaintiff
4601 Sheridan St, Suite 205
Hollywood, Florida 33021
Tel: (954) 228-5674
Fax: (954) 697-0357

By: /s/ Joshua E. Feygin
JOSHUA E. FEYGIN, ESQ.

14

Florida Bar No. 124685
Josh@JFeyginesq.com

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on _____, 2026, a true and correct copy of the

foregoing was electronically served on all counsel of record identified on the Service List below

via the Court's CM/ECF e-filing portal.

/s/ Joshua E. Feygin
Joshua E. Feygin, Esq.

**SERVICE LIST**

Byron Acosta, Esq.
Byron Acosta, P.A.
2393 S. Congress Ave, Suite 207
West Palm Beach, Florida 33406
byron@byronacostalaw.com
Counsel for Defendants

15